B. F. GOODRICH CO. ET AL., APPELLEES, *v.* LINDLEY, TAX COMMR., APPELLANT.

(No. 78-874—Decided June 13, 1979.)

*Messrs. George, Greek, King, McMahon & McConnaughey* and *Mr. Kiehner Johnson,* for appellees.

*Mr. William J. Brown,* attorney general, *Mr. James C. Sauer,* for appellant.

PAUL W. BROWN, J. We conclude that the holding of the Board of Tax Appeals violates the statutory scheme and is unreasonable and unlawful.

Clear statutory language makes the purpose of the consumer the basis of his claim of exemption. If that purpose comes under attack, actual use has evidentiary value

tending to illuminate that purpose and may assist the fact-finder in a reasonable rationalization of an order denying the claimed exception in whole or in part.

The so-called primary use test, a judicial creation developed in *Mead* v. *Glander* (1950), 153 Ohio St. 539, was extended to fungibles in *Richardson-Merrell* v. *Porterfield* (1972), 32 Ohio St. 2d 281, a case in which part of the goods manufactured for sale (drugs) was used for samples.[3] In that case, the fractional portion of raw material incorporated by manufacture in the product and given as samples rather than sold at retail was 8 percent. This use was incidental to the 92 percent clearly excepted use and was so incidental and complementary to the excepted purpose as to not detract from the credibility of that purpose. Since that evidence was not destructive of the overall tax exempt purpose claimed, it can not be reasonably said that the taxpayer, under those circumstances, failed to affirmatively establish his right to the exception claimed as required by our opinion in *National Tube Co.* v. *Glander* (1952), 157 Ohio St. 407. This then was an adequate evidentiary basis for deciding *Richardson-Merrill, supra.*

However, the extension of the primary use test to fungibles was unnecessary. The fact that the extension was destructive of the overall tax scheme becomes apparent from the Board of Tax Appeals' use of its rationale in the reversal of the Tax Commissioner's order here. The conclusion that it is inappropriate to use the primary use test rather than to follow the clear requirements of the statute is particularly obvious here by reason of the presence of direct payment permits sought under R. C. 5739.031. Such permits presuppose use of fungibles for mixed taxable and excepted purposes, and acknowledge that a substantial (not

---

[3]We are not saying that the mere showing by the Tax Commissioner of an unforeseen incidental and inconsequential nonexcepted use requires apportionment when a taxpayer in good faith claims exception and shows that substantially all the subject material was used for purposes consistent with his claim. The inconsequential use may there be disregarded without giving lip service to this court's primary use test.

incidental or inconsequential) amount will be used for taxable purposes, that the amount so used will be measured as used, and that the tax will be paid.

Appellees here assert, and the Board of Tax Appeals here holds, that our decisions in *Richardson-Merrell* and in *Emery* require exemption of such fungibles in their entirety under these circumstances whenever exempt use is the primary use of such fungibles.

We renounce this proposition. We conclude that since the extension of the primary use test to sales of fungibles in *Richardson-Merrell* was unnecessary and erroneous, that part of its holding must be overruled. We conclude further that the primary use test cannot be used to permit a consumer, merely by failing to separate or apportion fungibles used for mixed taxable and non-taxable purposes, to escape payment of tax clearly contemplated by the statute.

Our overruling of *Richardson-Merrell* requires reexamination of our holding in *Emery*. There, a non-excepted use of steam derived from the oil or coal there purchased was perceived to be incidental, even though that use amounted to 13.7 percent of the steam produced. That case cannot be interpreted to mandate the proposition that payment of tax on a substantial contemplated and non-excepted use can be avoided by admixing a somewhat larger quantity of coal used for an excepted purpose.

To the extent that *Emery* depends upon the holding in *Richardson-Merrell* that the primary use test applies to fungibles where the purpose of the use of fungibles is apportionable between taxable and non-taxable purposes, before or after the date of sale, that holding must be considered to be modified by what we say here.

Accordingly, the decision of the Board of Tax Appeals being unreasonable and unlawful is reversed.

*Decision reversed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.